You may begin whenever you're ready. Thank you, Your Honor, and may it please the Court, Mark Perry for Rimini Street. We respectfully submit that the injunction here should be reversed for three principal reasons. First, the jury's finding that Rimini's infringement was innocent, meaning that Rimini had no knowledge and no reason to know that its conduct was unlawful, precludes injunctive relief on the unusual facts of this case. Would you agree that, in general, one need not be a willful infringer to be the recipient of an injunction? Of course, Your Honor. Copyright infringement, like patent infringement or trademark infringement, is almost always a strict liability offense. The unusual cases on the one side are willful and on the other side are innocent. I think it's critical that in the history of the Republic, Your Honor, no injunction has ever been imposed on an adjudicated innocent infringer. We know from the Supreme Court's decision in this case that the history of copyright litigation is relevant to the scope of the relief under the act. And Oracle is standing here asking this court to be the first ever to affirm an injunction against an innocent infringer. And not just an innocent infringer, Your Honor, but one that stopped the infringing acts immediately upon the summary judgment ruling. The uncontradicted evidence in the record shows that those two acts stopped before trial even started and have never been done again since July of 2014. We're now five years after that. And filed its own declaratory judgment action, the second case, to have its current processes declared lawful. That's not the act of a recidivist. That's not the act of a lawbreaker. That's the act of a third-party support provider doing its best to comply with these licenses. It's important, Your Honor, Romini asked that these two actions be put together. We said, let's try everything in one trial, the first processes and the current processes. Oracle resisted. Oracle refused. And the district judge said, we're going to draw a sharp line between process 1.0, the first case, and process 2.0, the second case. To jump to the end of my presentation, and I'll get back to it, Oracle is now interpreting this injunction to prohibit the process 2.0 practices. There's nothing left of this case even being involved. That's not in front of us, though. I agree with that, Your Honor. And let me come back to that, though, in a moment. On the innocence point, the court did not address the innocent finding. It's nowhere mentioned in the court's order. We have made this point over and over and over again. Right, and there's a question whether that makes any difference to the outcome when you read everything the district court said it did. Absolutely, Your Honor. We think it makes a huge difference for two reasons. First is, the very fact of the innocence finding has to be taken into account under eBay. The court's failure to address the innocence finding was itself an abuse of discretion that requires vacater. But second, this court doesn't need to send it back because the court went further. The court made its own conscious disregard finding. Conscious disregard is the definition of willful infringement, the very claim that the jury rejected. But the context in which the court made that passing remark was in a discussion, I thought, of irreparable harm. And you could excise that sentence, and everything else would remain the same. I don't really understand why that matters. It matters for three reasons, Your Honor. First, it is never acceptable for a district judge of the United States to disregard a jury's finding so blatantly. And if the court had only done it once, it might be one thing. And even almost every constitutional violation can be analyzed for harmlessness. And so to say, well, the district court did something wrong is only half the battle, it seems to me. Absolutely, Your Honor. Let me take that in three steps. First, he did it wrong twice. Because remember, the court remanded this injunction. We went back and made the Seventh Amendment argument. The judge ignored it. He never addressed it. Oracle pooh-poohed it at argument. And the judge made the finding of conscious disregard again after we made the Seventh Amendment objection. So this was not something that was a mystery to Judge Hicks. Second, on harmlessness, two answers. First, I'm going to go back to my favorite trope. No court in the history of the Republic has ever found a re-examination clause violation harmless for the simple reason that the text of the clause says that no court of the United States shall re-examine a finding of fact made by a jury. It is an absolute prohibition on the power of our federal district judges. And this judge violated it. And it cannot be harmless in the context of this case, Your Honor, both because the innocence determination itself should preclude an injunction. But to go directly to your point, Judge Graber, irreparable harm is the central issue on this injunction. The central question is whether Oracle proved irreparable harm caused by the infringing acts on a prospective basis. And it failed on all three of those, as we've pointed out. But the judge's comment, and it was not a passing comment, it is the preface to the entire paragraph, the only paragraph on which Oracle relies for irreparable harm findings, is the conscious disregard statement. The judge said, Romini acted with conscious disregard of these copyrights, and then it did these things. And without that finding, we submit the judge could not have found that any infringement caused harm to Oracle in its goodwill and reputation. And certainly, it could not have found that the harm was irreparable or that the causal nexus requirement was met, which really leads me to my second point on reversal of this injunction. The causal connection that's required is not between Romini's existence in the marketplace, which this court held in the last opinion is lawful. We are in lawful competition with Oracle. It has to be between the specific infringing acts and Oracle's prospective harm. The Third Circuit just made that clear last week in the TD Bank case that we submitted in our 28 J's. The causal nexus requirement was not met here. The only two acts adjudicated as unlawful were hosting the development environments on Romini's own servers, that form of local hosting, and wholesale duplication of development environments, which is a particular form of what Oracle calls cross-use, duplication of development environments. There is no connection in the factual record between those two acts in any loss of goodwill or reputation by Oracle in the past. And nothing in that paragraph at ER 23 to 24 says so. But more importantly, Your Honor, and dispositively, we submit, in the future, it is Oracle's burden to show that an injunction is required to prevent irreparable harm on a going forward basis from those two acts. Those two acts were discontinued by July of 2014. We put in five affidavits that establishes that beyond the shadow of a doubt to which Oracle has never responded factually or legally. In fact, they don't even mention them. The processes have not taken place since 2014. Oracle cannot possibly suffer future harm from those acts. There is no causal nexus to support this injunction. Period, end of story. I mean, again, we can set aside conscious disregard. We can set aside innocence. That one point is enough to turn over this injunction, as the Federal Circuit has made clear in that series of Apple versus Samsung cases. How much of the fact that there hasn't been any similar infringement or improper activity, how much of that is because there's been an injunction in place? Well, there hasn't been an injunction in place for most of that time, Your Honor. There has only been an injunction since August of 2018. So for four years, the company changed its practices. And again, let's remember what happened. Rimini honestly, reasonably thought that its former practices were within the licenses. The judge read the licenses differently at summary judgment. So Rimini immediately, without waiting for a trial, without appealing, spent millions of dollars to change its practices to eliminate those things that the court found to be infringing. We then went to a trial and an appeal and all that, and we paid for it. We paid a license for doing those things in the past. But it wasn't an injunction that required Rimini to change its processes. It was clarification from the court as to the meaning of the licenses. And we have current processes, 2.0, that we are fully confident comply with the licenses and the Copyright Act, and a second case, which we initiated to determine that. And to give the court a sense of it, after two some years of discovery, gazillions of documents have been exchanged, hundreds of depositions. There are seven summary judgment motions pending in the district court, 541 pages of briefing, thousands and thousands of exhibits that address 16 discrete practices and policies, aspects of the current practices. That has not been decided. That's the second case. But if you look at the letter that Oracle sent that we submitted on our July 3, 28 day, what the five things that they now say are in contempt of this injunction, and to be clear, I'm shifting gears to my third argument, which is overbreadth, they now are not complaining of anything that was adjudicated in the first case, because it stopped. They are now saying that we are in contempt of this injunction for doing things that have never been litigated in any case, and that have nothing to do with the things that were litigated in the first case. And just to make one example clear, the cross-use in the first case was duplication of development environments from one client to another. Fine, we stopped doing that. Now what Oracle says is, if we use one client's development environment to develop, for example, a tax update, change the tax rates for Oregon from 2018 to 2019, we can't then go into the separate development environment for a second client and apply the same update. Our work product, our knowledge, our learning, our experience. The last time this case was before this court, your honors, Oracle wrote in its brief at page 50, the injunction does not enjoin human thought or ingenuity, but rather enjoins the cross-use that underlies the infringement finding. The most recent letter in the district court that we submitted to this court shows the lie in that statement. Now they have taken the position that the injunction does prohibit human thought and ingenuity. It prohibits learning and experience by Ramini Street engineers. It has nothing to do with Oracle work product and everything to do with Ramini work product. This overbreadth is so dramatically broad, your honor, that they've essentially taken licenses that authorize third party use and support, maintenance, modification of the software, and so forth, and said that we are now in contempt of an injunction for performing third party support and maintenance and modification of the software. They have rewritten the licenses, put them in an injunction, and put it out. There's also a disconnect, and I'll end on this if I may, between the judge's order granting the injunction. Page ER 26, in that order, he says it only enjoins things that were adjudicated in the first case. Your honor, if that were true, we actually wouldn't be here. If the injunction said, thou shalt not host development environments on your own servers or duplicate development environments from one client to another, we're not doing that anymore. We wouldn't be complaining about the injunction. If that were the scope of the injunction, there wouldn't be a controversy between these parties. As to the first case, we'd be done, except for the fees, and you'll sort that out. But this injunction goes so much farther. It says that anything that Ramini does for one client, it can't use for another. We can't access sort codes. It's like saying we can't read a book. We can't watch a movie. We can't do anything under this injunction, and none of it was adjudicated in this case. Not one thing that they now say is contempt was adjudicated in this case, because they're trying to short circuit the second case. They don't want to take those claims to summary judgment in a jury trial. They want to have them adjudicated on a summary contempt motion in the first case, which is why, to come full circus to your second question, Judge Graber, I don't think that is properly before this court, but only because we think that the case ought to be and ought to have been limited to what was adjudicated in the first case. So that if there's any injunction, it would have to be limited to the scope of the judgment, and all of this overbreadth is a reason to vacate this injunction, but the easier way to do it would be to reverse any injunction, because on the unusual facts here, none is required. If I may reserve the balance. You may. Thank you. Good morning, Your Honor. Paul Clement for Oracle. I want to begin this argument really where my friend on the other side began it in response to your question, Judge Graber, which is the specific question of, are they arguing for some kind of categorical rule that says that you can never have an injunction against an innocent infringer? And if I understood him correctly,  for that categorical rule. And then it turns out that there is a very clear and it seems to me that we are in a matter of a discretionary judgment by the district court. And my friend's brief and my friend's argument doesn't talk much about the standard of review. But I think with the possible exception of the re-examination clause issue, which I'm happy to discuss, I think everything that my argument, my friend advanced to you today, is subject to an abusive discretion standard of review. But if we were to conclude, as Mr. Perry argues, that the injunction goes beyond what was actually litigated in the case, would that constitute an abusive discretion? It wouldn't, Your Honor. And I don't think there's any predicate legal rule that says that an injunction has to be strictly limited to what was adjudicated in the previous case. And I certainly think there's plenty of case law, and I would point this court to its own decision in the Apple against Systar case, for example, P-S-Y-T-A-R case, where in that case, this court approved an injunction that not only enjoined what was actually litigated, but actually enjoined as well, the next iteration of the computer program of the infringing entity. So even though that was a new, essentially 2.0, it raised essentially the same issues as in the adjudicated litigation, and that becomes a question for the district court exercising its sound discretion to enjoin conduct in the words of the statute that can prevent or restrain violations of copyright. And so there just isn't this predicate legal rule that says that you can only enjoin something that was strictly litigated in the first case. There is an allowance for a degree of prophylaxis, if you will, and that degree is basically, I'm certainly subject to some, you can abuse discretion, but it's subject to an abuse of discretion standard. I would also say that our view is the degree of prophylaxis here is not nearly as great as my friend on the other side is suggesting, because the first case really was about cross-use, and what the injunction does in the main is enjoin cross-use, and sure, cross-use can take different forms. Just to give you a concrete example, I mean, and this really goes less to cross-use than local hosting, but was another thing that was definitely adjudicated the first time around. All right, there's more than one way to engage in non-local hosting, and the thrust of the litigation was that, certainly as to the PeopleSoft license, you really needed to keep the materials on their servers. Well, in the first case, Remini might not have engaged in cloud hosting. It might have actually had the documents on its own servers, but if the ruling in the first case is you have to keep them on the client's servers, then it really doesn't matter. It's a new way to violate the basic principle that was laid down in the first litigation, but it's hardly something new or novel that can't be enjoined by the district court, but to be as responsive as I can, I mean, I think the way my friends have briefed this case, you sometimes lose sight of what's a legal error and what's abusive discretion, and I do want to be as clear as I can be that there isn't some legal principle that says that you can never go beyond the meets and bounds of what was adjudicated in the first case, and then because of that, we really are on that issue of over-breath on an abusive discretion standard. Would you agree that things like cross-use and local hosting could be allowed by a license if the parties so agreed? Absolutely, in theory. So I guess one potential over-breath is that the way the injunction is written, it doesn't say unless the parties agree to the contrary, they can't do this. Perhaps it's implicit, but it isn't explicit. Well, I think it is implicit, and I think if I'm understanding your question, I mean, I suppose it's a hypothetical possibility that tomorrow Oracle could change the terms of its license with one of its customers. Correct. And that would create some new opportunity to do something that under the licenses that were in place at the time of the injunction. Right, because that was then and this is now and this goes into the future. Exactly, and the exact right way to deal with that, which is not a situation that's unique to this case, is if that happened, then Rimini Street would have the opportunity to go to Judge Hicks and ask for the injunction to be modified. Well, why should they have to go to that trouble if it can be made clear in the injunction that it won't apply if there's a different license that gives permission? Well, first of all, you're now advancing an argument that I don't think my friends on the other side have really made that there's a lack of clarity as to this particular issue. I think it's quite clear and quite implicit. And I also think that this is just a product of the way this case came out, right? And this is precisely why I think an injunction here is so important, because this is a case where Rimini in direct competition with Oracle is engaging in conceded copying. So this is not something where they have any argument that they're not engaged in copying. Right, that takes me to the question that was sent to the parties before argument. And that is the district court's statement that is inconsistent with the jury's finding of innocent infringement. And what, if anything, we should do about that. Would you address that, please? Yeah, I'd be very happy to, Your Honor. I mean, I think there's two ways to address that. I think we have argued throughout this litigation that the statement that he made, the conscious disregard statement, was not in any way sort of necessary or even really material to his irreparable injury finding. This is not a situation where the district court That's a harmless error argument, essentially, that it doesn't make any difference that he said that. We have argued it in terms of, because it's not necessary or material, there's no re-examination problem at all. If the court is more comfortable processing that issue as a harmless error analysis, I think that that is something that is perfectly available to this court at this juncture. I think this court has jurisprudence about when you can reach a harmless error issue, when it hasn't been squarely raised. One of the exceptions is when there's no prejudice to the party. I think precisely because we've made the same basic argument Can you give us a case on that? Sure. The case I have in mind is the corner case of this court, which is the case you referenced in your order, where it specifically says that a lack of prejudice is one of the exceptions to harmless error. And I think this is about the clearest case you could find of where there's no lack of prejudice, because I want to read to you from page 27. No lack of prejudice? That's not what you mean to say, I think. Sorry, there's no prejudice. Sorry, and I did misspeak. If you look at page 27 of their opening brief, in this paragraph, they say, at the beginning, Oracle has previously suggested to this court that the conscious disregard finding was not necessary to the injunction. And then at the very end of that paragraph, they say Oracle cannot pretend that this error is somehow harmless. So in their opening brief, knowing full well that we have always taken the position that that conscious disregard finding was not necessary to the irreparable injury finding, they responded, essentially, by saying, oh, no, it's not harmless. It's harmful. So that issue, they have no prejudice from the fact that we made the non-necessary, non-material argument in the box of no re-examination violation at all, as opposed to in the box of harmless error. One other thing I want to just make sure I respond to is my friend said that there's no case that's ever found a re-examination clause harmless. I don't think that's correct. And I think there's a case of this court, SEC against Gowrish, which is at 510 F Appendix 588, that in the context of that case, did find a re-examination. But that's unpublished, correct? Yes. But it is a case, I guess, maybe more precisely. Do you know of a published case that finds it to be harmless? I don't have one at the ready, Your Honor. But I mean, we are not talking, I mean, re-examination clause problems do not arise with any great frequency. That is fair. We are not talking about this. Rarely in this context. Yeah, and just to give you another for instance, and I think this is actually why our argument that there's no re-examination clause problem here at all is correct. We haven't found a single case where a court has found a re-examination clause in the context of a district court issuing an injunction. And the reason I think that's true, and the reason why I don't think properly understood there's even a re-examination clause problem here, is that the question that a district court is considering at the point that they are going to issue an injunction is not the same issue that was tried to the jury. In fact, it's not even the same temporally. Because when the jury's looking at this issue of whether the infringement was willful or innocent, they're looking at a specific period of time. I think in this case, the instruction, they were looking at primary conduct that ended in December 31st, 2011. And they're looking just at that conduct. The district court is asking the question about irreparable harm at the point that the district court is entering the injunction, which is a later period in time. And I think that's important, because I don't Well, wait a minute. Are you suggesting that at that point in time, the district court had more evidence available to it than the jury had? I think it did. And I'm also saying that in all events, it's a different question. And I just don't think, and I think part of the reason why the re-examination clause cases are not legioned is because it really is focused on a pretty specific problem. And like this court's decision in Toysher, I think sort of illustrates a situation where you do have a potential re-examination clause problem, because there, the court in deciding whether to have a reinstatement ruling or an order or a front pay remedy is looking at the exact same question that the jury was determining. Well, I'm sorry. Tell me again why in this case, it's not, as you put it, the exact same question? Well, I think the easiest way to illustrate it is it's not even the same question as a matter of time. So the judge, I think it's properly, at the point he's issuing the injunction, is asking, given everything I know. Oh, but see, if that's his approach, I suppose, if he were careful, he would say, now, wouldn't he try to emphasize that he's talking about something, a different period of time than that was before the jury? Absolutely, Your Honor. And so I think if he were careful, but I think that illustrates my point, which is if he were careful and he had said, all right, the jury made a finding of innocent infringement, but the jury doesn't have all the information I have before me, either because I've sat in this case from the beginning and because I'm looking at this at a later period of time. And so notwithstanding that decision about innocent infringement, which I will not disturb, I still think that, on balance, Remini Street has engaged in conscious disregard of Oracle's copyrights. I don't think there would be a reexamination clause problem at all, and I think that would be open to him. So the question is, all right, he wasn't that careful, but should we rush to the conclusion that there was, therefore, a reexamination clause problem? And I would submit the answer to that is no. And the reason I think the default should be otherwise, which is the default should be, unless it's clear that he essentially had to reexamine something that the jury found, I think this presumption should be that a district court answering a different question in a different period of time did not commit a reexamination clause violation. But even if you don't accept that and you want to look at this through the rubric of harmless error, before I sit down, I do want to make clear just how harmless I think this error was, because nothing in his reasoning on irreparable injury really properly understood turned on the mens rea of Rimini Street and its infringement. I mean, if you go to the paragraph at issue here and you just substitute the word infringement for conscious disregard, everything flows precisely as follows from that paragraph. I mean, nothing changes. And the reason is his logic is essentially we suffered irreparable injury because the infringement allowed for cut rate pricing. And the cut rate pricing, in turn, produced a loss of goodwill on our part. And just nothing about that. It all flows from the infringement. And even if the infringement was perfectly innocent, we still were irreparably injured from that infringement. And just to kind of put this in more common sense terms, I mean, there's no rule of law that says, for example, you can't get an injunction in a case where the underlying liability conduct was negligence. Now, it's committed to the discretion of the district court. You could argue that, well, we were just negligent. We weren't doing anything malicious. And therefore, we're not likely to recur in this conduct. And that's something that's committed to the sound discretion of the district court. Now, if, for example, I have my foot run over by somebody in a car, I mean, I think I'm, fairly speaking, irreparably injured by that if I can't quite walk the same ever again, doesn't matter whether the driver was negligent or did it intentionally. I just suffered a concrete injury as a result of their conduct. And I think the district court's finding here about irreparable injury are exactly of the same nature. It's that they were, first of all, they were only in business because of their infringement. Their infringement allowed them to market their product at a much lower rate. And that much lower rate caused us a loss of goodwill, which I think is sort of a classic injury in terms of irreparable injury. And none of that turns on whether it was innocent infringement or willful infringement or conscious disregard. So it does seem like a classic case for harmless error. There are no further questions, Ms. Smith. I don't believe so. Thank you. If I may make three quick points, Your Honors. Judge Graber, you asked about overbreadth. The Gypsum case, which my friend cites in his brief for the proposition that an injunction can go beyond the scope of the adjudicated conduct, says at pages 89 and 90, acts in disregard of law call for repression by sterner measures than where the steps could reasonably have been thought permissible. In other words, innocent infringers get a different rule than willful infringers. And that's the Supreme Court talking on this subject. And second, the Gypsum case also says that where the judge goes beyond the adjudicated acts, he has to explain why. And I defy my friend or the court to say where Judge Hicks ever explained the basis for going beyond the adjudicated acts. On the contrary, at page ER 26, Judge Hicks seemed to think that he was only enjoining the adjudicated acts. Second, Judge Graber, you asked about the license and the effect of the license. There's many examples in this injunction. I'll just point to one at paragraph 2.A, which is at ER 14. The injunction now says that the licenses have to, quote, authorize Rumini Street's specific conduct. That's not the way licenses work, and that's not the way these licenses are written. These licenses are written to say any use not otherwise in contravention of the license, any use to support the users, and so forth. They don't have specific authorization. But Oracle is using that language in the second case and in the contempt proceeding to say that because they don't say specifically tax updates, the tax updates aren't permitted. Third, no prejudice, Mr. Clement says, from the conscious disregard finding. Oracle gave that language to the judge on purpose to get around the innocence finding. Mr. Clement's only explanation now is timing. When you say Oracle gave that language to the judge, can you tell me the context? Yes, Your Honor. It was in Oracle's motion for an injunction in the first place and its renewed motion for an injunction. That was Oracle's response to our innocent infringement finding was that the evidence actually shows conscious disregard, to which our response is, that violates the Seventh Amendment. You can't make that finding. And the judge went and made it anyway over our objection. Mr. Clement's only answer is timing. The only evidence the judge had that the jury didn't is the five affidavits attesting to the cessation of these practices in July of 2014. The judge refused to give that information to the jury because Oracle insisted that the new processes be kept away from the jury. So the judge knew that we had stopped the practices,  Thank you, counsel. Thank you. The case just argued is submitted. We, again, appreciate very helpful arguments from both of you. And we stand adjourned for this morning's session. OK.
judges: Tashima, Graber, Owens